IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DORIS STEVENS,

      Plaintiff,

v.                                         CASE NO. 1:09-cv-00162-MP-GRJ

MICHAEL J ASTRUE,
Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) filed under Title II of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are not supported by substantial evidence and the decision of the Commissioner should be reversed and remanded.

## A.  Procedural History

Plaintiff filed an application for DIB on August 2, 2002, alleging a disability onset date of July 1, 2001, because of Lupus, rheumatoid arthritis and low back pain.  Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on November 2, 2004, and entered an unfavorable decision on March 3, 2005.  The Appeals Council denied Plaintiff's request for review, and a formal complaint was filed in this Court resulting in a remand to the Commissioner for further proceedings.

Specifically, the case was remanded "to include evidence of Plaintiff's back surgery in September 2004, an updated RFC, and updated consultative examination, and if warranted by this additional medical evidence, the use of a vocational expert to assess the limitations of Plaintiff's current medical condition and the affect thereof on her ability to work in response to a hypothetical that includes the exertional and non-exertional limitations established by the evidence." (R. 349). Another hearing was held by video on October 28, 2008, and an unfavorable decision rendered on March 2, 2009. A timely appeal was filed with the Appeals Council, which denied review, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

## B. Findings of the ALJ (R. 323-34)

In her decision, the ALJ acknowledged that the matter had been remanded to obatin evidence of the claimant's back surgery that took place in September 2004, and to obtain an updated consultative examination, and if warranted, to obtain additional medical evidence and vocational expert testimony. (R. 326). The ALJ further acknowledged that Plaintiff is insured through December 31, 2006 and, therefore, she must establish disability on or before that date. (R. 326). The ALJ found that Plaintiff suffered from the following severe impairments: spondylosis of the lumbar spine, arthritis, Lupus, and chronic back pain, but that these impairments did not meet any listing requirements, specifically the impairments did not meet Listing 1.00; 3.00; and 14.00.

The ALJ found Plaintiff's testimony of pain less than fully credible. Plaintiff's reported daily activities included vacuuming, sweeping, cooking meals, and dusting. She took care of two children and was able to take care of all of her personal needs.

Medical reports showed that Plaintiff's back pain and Lupus were controlled by medication, and specifically, her Lupus was stable and asymptomatic according to the medical records from January 2004 through June 2004.

Little weight was afforded to the functional assessment of Dr. Greenberg, who found Plaintiff was markedly limited in her ability to complete a normal workweek because of pain. Dr. Greenberg treated Plaintiff one time in 2002 at which time he found her limited only as to heavy lifting, contrary to the 2004 assessment, noting marked limitations.

Little weight was afforded to the consultative examination obtained on remand because the opinion of the consultative examiner was given a year and a half after Plaintiff's DLI.

The ALJ found more credible – and therefore afforded more weight – to the state agency opinion dated December 4, 2002, because it was consistent with the medical evidence of record, and consistent with Plaintiff's reported activities.

The ALJ found that through December 31, 2006, Plaintiff was capable of lifting 10 to 20 pounds; she was able to walk and stand for 2 hours out of an 8 hour workday; she had no limitation on sitting, but needed to periodically alternate sitting and standing positions; she could only occasionally climb, balance, stoop, kneel, crouch or crawl; she should not climb ladders, ropes or scaffolds; and she should avoid environmental extremes and heights.

Using the Medical-Vocational Guidelines as a framework, but also utilizing a vocational expert, the ALJ found that there were a number of jobs in the national

economy which Plaintiff could perform.

## C. Issues Presented

The sole issue raised by Plaintiff is that the ALJ should have posed a hypothetical to the vocational expert that reflected the restrictions in the report of Dr. Hunter, who performed a consultative examination after remand.

The government argues that the ALJ did not err because Dr. Hunter's report was obtained in June 2008, after the relevant time period, and reflects limitations which are inconsistent with the record as a whole.

## D. Standard of Review

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624

(11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal.  Id. (citations omitted).

 A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairment?

3.      Does the individual have any severe impairments that meet or equal those

listed in Appendix 1 of 20 C.F.R. Part 404?

4.    Does the individual have any impairments which prevent past relevant work?

5.    Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

### E.  Summary of Claimant's Relevant Medical History

Plaintiff reported a two year history of lower back pain in December 1999, and a ten year history of Lupus.  (R. 133).  X-rays revealed spondylolisthesis, which Dr. Scott-Okafor treated with physical therapy, home exercise, and Naprosyn.  (R. 129).  Plaintiff was working full time within her 20 pound lifting and carrying restrictions "without problems."  (R. 128).  It was anticipated that these restrictions would resolve or adjust

within two to three weeks.  (R. 117-119). Approximately one year after December 21, 2000, Plaintiff continued to complain of intermittent back pain and requested to be off work.  (R. 113).  Plaintiff was told, however, that her condition did not warrant such a limitation, and that she could return to work on mild restrictions.  (R. 113).

On December 21, 2001, Plaintiff presented with signs of discoid lupus in both arms and her face, with continued back pain.  (R. 184).  Dr. Branin noted that Plaintiff was doing nothing to help with her back pain, she had gained weight, and she was not doing any low back exercises.  (R.175).  He prescribed exercises, medication, and told her to be rechecked in two months if her back was still an issue.  (R. 175).  In January 2002 Dr. Branin referred Plaintiff to Dr. Longley for continued treatment of her Lupus.  (R. 178).

Plaintiff was examined by Dr. Longley on February 27, 2002. Although Dr. Longley found Plaintiff did not have any  new or active symptomology, he did note that a back x-ray taken in November 2002 showed advanced degenerative disc disease at L4-5 and "anterotithesis" of L4. (210, 224). Dr. Longley prescribed epidural injections (R. 234-241), which produced only "modest benefit."   He also discussed surgery with Plaintiff on October 30, 2003.  (R. 242).  Plaintiff advised  that she planned to go forward with surgery in February 2004.  (R. 257).  There are, however, no records of this surgery.  Later treatment notes from Dr. Longley show continued improvement and stabilization with her Lupus, so long as Plaintiff took her medication as prescribed.  (R. 251-254, 261-277).  As late as June 2004, Dr. Longley noted that her Lupus was well controlled.  (R. 390).

A consultative examination by Dr. Greenberg  November 13, 2002, noted decreased range of motion in the cervical, lumbar spine and both hips, with mild decreased arm, grip and leg strength.  No other motor abnormalities were noted.  (R. 194-197).  Dr. Greenberg's opinion was that Plaintiff should avoid heavy lifting or bending.  (R. 197).  In contrast to these notes, Dr. Greenberg provided an assessment for Plaintiff's attorney on April 2, 2004, and found Plaintiff had constant, chronic and marked pain that markedly would limit her ability to complete a normal workday and workweek.  (R. 278-283).

A back examination by Dr. Kennedy and a review of MRI scans taken in February 2003, revealed spondylolytic spondylolisthesis at L5-S1 with radiculopathy and physical therapy was recommended.  (R. 242-243, 248).  Although Dr. Kennedy is reported to have performed Plaintiff's back surgery, these medical records are not included in the administrative record .

The consultative examination conducted by Dr. Hunter on remand is dated June 3, 2008.  (R. 394-406).  Plaintiff reported to Dr. Hunter that she has tried surgery, injections, physical therapy, and medication with no results and her pain is constant, throbbing, and a seven to eight on a scale of ten.  (R. 394).  Dr. Hunter noted decompression fusion in 2004, with a well healed surgical scar.  (R. 395-396).  He opined that Plaintiff would have difficulty with prolonged sitting, standing, walking, lifting and carrying.  (R. 397).

### F.  Summary of the Administrative Hearing (held October 28, 2008)

Plaintiff was 38 years old at the time of the hearing.  (R. 415).  She has two

children, ages 15 and 8. (R. 415). She claims that rheumatoid arthritis, lower back pain, joint pain and Lupus prevent her from working. (R. 418). During a typical day she takes care of her home and her children, but must rest 20 to 30 minutes at a time between tasks. (R. 426).

In the form of a hypothetical question, the ALJ asked the vocational expert to assume a claimant of the same age, education, and work experience as Plaintiff, who could lift 10 pounds frequently and 20 pounds occasionally, stand or walk for 2 hours in 8-hour workday, and sit for an unlimited amount of time in an 8-hour workday. (R. 433). The hypothetical claimant needed to periodically alternate between sitting and standing positions. (R. 433). She could occasionally climb, balance, stoop, kneel, crouch, and crawl, but she could never climb ropes, ladders, or scaffolds. (R. 433). Additionally, the hypothetical claimant needed to avoid concentrated exposure to extreme cold and heat, wetness, humidity, and vibrations. (R. 433). In response, the vocational expert stated that the hypothetical claimant would be able to perform the jobs of surveillance system monitor (8,800 jobs in the national economy), optical goods final assembler (296, 340 jobs in the national economy), and food and beverage order clerk (276,160 jobs in the national economy). (R. 433). Plaintiff's representative added to the hypothetical that she would have to take four to five 30 minute breaks because of pain, and the expert responded that there were no jobs that should could perform with these restrictions. (R. 435). According to counsel, this limitation is supported by the pain form Dr. Greenberg completed in April 2004. (R. 435).

## G. DISCUSSION

The Court finds that this cause should again be remanded for further development, but not for the reasons offered by Plaintiff's counsel. When the Court previously ordered this cause remanded, the primary concern was that despite the fact Plaintiff had back surgery a few weeks prior to the hearing (September 2004), therecords were not in the file nor discussed in the ALJ's decision. (See Case No. 1:09cv162-MP/AK, Doc. 10, pp. 8- 10). The Court directed that the case be remanded specifically:

> to include evidence of Plaintiff's back surgery in September 2004, an updated RFC, and updated consultative examination, and if warranted by this additional medical evidence, the use of a vocational expert to assess the limitations of Plaintiff's current medical condition and the affect thereof on her ability to work in response to a hypothetical that includes the exertional and non-exertional limitations established by the evidence.

(R. 349).

The only medical records obtained upon remand are from Seldon Longley dated June 28, 2004, (Exhibit 16F, R. 390-391); from Dr. Kennedy dated September 27, 2007 through October 30, 2007 (Exhibit 17F, R. 392-393); and the Consultative Examination by Dr. Hunter dated June 3, 2008. (Exhibit 18F, R. 394-406). Plaintiff testified at the hearing that she received surgery in September 2004 from Dr. Kennedy (R. 421), and Dr. Hunter referred to it and noted Plaintiff's surgical scar. Despite the reference to the surgery the records of this surgery are not in the file nor was the surgery addressed by the ALJ. Indeed, the "new" records from Dr. Kennedy (exhibit 17F), which document the administration of two epidural injections, note that "Overall she has done well as far

as surgery goes with the decompression and fusion for spondylolisthesis. However, she does have some trochanteric bursitis." (Exhibit 17F, 392-393). A significant reason for the Court's earlier decision remanding the matter was so that the records of this surgery would be included in the record and the ALJ would then address the surgery in his evaluation. The records of the surgery are not included in the administrative record and the ALJ on remand failed to mention or evaluate the surgery. Notably, neither Plaintiff nor the Commissioner provide any explanation in their briefs why the surgery records were not obtained and why the ALJ did not address the surgery on remand.

In addition to the failure to obtain the surgery records and address their effect, if any, on remand an update Residual Functional Capacity assessment was not conducted as directed by this Court and the Appeals Council. The failure to do so is material in view of the fact that the ALJ gave "great weight" to the RFC dated December 4, 2002, (R. 333), which was completed prior to the 2004 surgery. (R.198-205) Because this RFC is not substantial evidence of Plaintiff's functional abilities after her surgery, the decision of the ALJ is not based upon substantial evidence and must be reversed with directions that the ALJ evaluate Plaintiff's functional limitations, if any, after her surgery.

Accordingly, in light of the foregoing, it is respectfully **RECOMMENDED:**

That the decision of the Commissioner be **REVERSED**, and this cause **REMANDED** for further development as directed in the Court's previous remand order. The ALJ should again be directed to obtain the complete records of Plaintiff's surgery in 2004, including all followup treatment notes and perform an updated evaluation of

Plaintiff's RFC. After conducting an updated evaluation of Plaintiff's RFC the ALJ

should elicit vocational testimony to address the functional limitations established by the

updated record.

At Gainesville, Florida, this 12th  day of November, 2010.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## <u>NOTICE TO THE PARTIES</u>

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**